No. 21-cv-03119 (JLR) (JLC)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAKEMA PHILBERT,

                              Plaintiff,

-against-

CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF EDUCATION, CAMILLE FORBES, and KERIANNE HARRISON,

                              Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CITY OF NEW YORK'S MOTION FOR SUMMARY JUDGMENT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendant City of New York*
*100 Church Street, Room 2-171*
*New York, N.Y.  10007*

*Of Counsel:  Rachel M. DiBenedetto*
*Tel:  (212) 356-5031*
*Matter No.:  2021-010250*

Rachel M. DiBenedetto,
  Of Counsel.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................. II

TABLE OF AUTHORITIES ......................................................................................................... III

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 2

ARGUMENT ................................................................................................................................... 5

POINT I: PLAINTIFF FAILS TO ESTABLISH A RETALIATION CLAIM UNDER THE ADA
 ......................................................................................................................................................... 5

       A.     Plaintiff cannot establish a prima facie case of retaliation .................................... 6

           1.    Plaintiff is not considered disabled under the ADA ............................................ 6

           2.    Plaintiff has not established "but for" causation .................................................. 7

       B.               Defendant sets forth a legitimate, non-retaliatory reason for Plaintiff's probationary discontinuance ............................................ 8

CONCLUSION .............................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

Alejandro v. N.Y.C. Dep't pf Educ.,
  No. 15-cv-3346 (AJN), 2017 U.S. Dist. LEXIS 49555 (S.D.N.Y. Mar. 31, 2017).................... 8

FitzGerald v. We Co.,
  No. 20-cv-5260 (AT), 2022 U.S. Dist. LEXIS 59036 (S.D.N.Y. Mar. 30, 2022)...................... 7

Jackson v. N.Y.C. Dep't of Educ.,
  768 F. App'x 16 (2d Cir. 2019) ................................................................................................ 9

Leftridge v. N.Y.C. Dep't of Educ.,
  No. 17-cv-7027, 2020 U.S. Dist. LEXIS 55423 (S.D.N.Y. Mar. 30, 2020) .............................. 6

Mestecky v. N.Y.C Dep't of Educ.,
  791 F. App'x 236 (2d Cir. 2019) .............................................................................................. 9

Natofsky v. City of N.Y.,
  921 F.3d 337 (2d Cir. 2019) ..................................................................................................... 8

Prendergast v. Port Auth. of N.Y. & N.J.,
  No. 19-cv-7314 (ALC) (BCM), 2021 U.S. Dist. LEXIS 164976 (S.D.N.Y. Aug. 31, 2021) .. 10

Slattery v. Swiss Reinsurance Am. Corp.,
  248 F.3d 87 (2d Cir. 2001) ..................................................................................................... 10

Smiley v. Cassano,
  No. 10-cv-3866 (RJS), 2012 U.S. Dist. LEXIS 39615 (S.D.N.Y. Mar. 20, 2012) .................... 9

Treglia v. Town of Manlius,
  313 F.3d 713 (2d Cir. 2002) ................................................................................................. 5, 6

Woolf v. Bloomberg L.P.,
  No. 16-cv-6953 (PKC), 2019 U.S. Dist. LEXIS 35082 (S.D.N.Y. Mar. 5, 2019) ............... 7, 10

Woolf v. Strada,
  949 F.3d 89 (2d Cir. 2020) ....................................................................................................... 7

**Statutes**

42 U.S.C. § 12102(1)(A) ............................................................................................................... 5

**PRELIMINARY STATEMENT**

On October 8, 2019, Plaintiff, a former Special Education teacher with the Department of Education ("DOE") served a Second Amended Complaint asserting the following claims: (1) failure to accommodate, hostile work environment, and retaliation under the Americans with Disabilities Act (herein after "ADA"), (2) disability discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964 (herein after "Title VII), the New York State Human Rights Law ("SHRL") and New York City Human Rights Law ("CHRL") and (3) New York State Law claims of intentional infliction of emotional distress, negligent infliction of emotional distress, and breach of contract.

On January 7, 2022, in an opinion and order regarding Defendants' motion to dismiss Plaintiff's Second Amended Complaint ("SAC"), Judge Engelmayer dismissed all claims except sustained Plaintiff's remaining retaliation claim under the Americans with Disabilities Act ("ADA").

Plaintiff's remaining retaliation claim is premised on the allegation that on June 24, 2019, she requested that Principal Harrison to have the custodian restore the power to the air conditioner in Plaintiff's classroom. See Order, ECF No. 31, at pp. 42-43. This Court found that Plaintiff pled that the air conditioning was requested as a reasonable accommodation for Plaintiff's migraines. See id. Then, on June 25, 2019, the DOE discontinued Plaintiff's probationary employment. See id. at p. 43.

Defendant, the DOE,[1] now moves for summary judgment pursuant to the Federal Rules of Civil Procedure ("FRCP") 56 seeking dismissal of Plaintiff's retaliation claim in its entirety.

As set forth more fully in Point I, Plaintiff's ADA claim should be dismissed because Plaintiff cannot establish but-for causation, and the DOE had a legitimate, non-retaliatory reasons for the complained of actions.

### STATEMENT OF FACTS

On September 6, 2011, Plaintiff, Shakema Philbert, joined the DOE as a special education teacher. See Def.'s Statement of Undisputed Material Facts (Def.'s 56.1 at ¶ 1. Plaintiff was assigned to P.S. 206 from September 2011 to June 2017. See id. at ¶ 2. For two consecutive years from September 2014 to September 2015 and September 2015 to September 2016, the DOE extended Plaintiff's probationary employment for an additional one year probationary period. See id. at ¶¶ 3-4. Following this extension, during the 2016-2017 school year, Plaintiff was absent 14 days, 3 hours, and 10 minutes. Id. at ¶ 8. Then, the DOE extended Plaintiff's probationary period for an additional two consecutive years from September 2017 to September 2018 and October 2018 to October 2019. See id. at ¶¶ 7, 9. During the 2017-2018 school year, Plaintiff was then absent 24 days, 12 hours, and 16 minutes. Id. at ¶ 9.

During the summer of 2018, Plaintiff sought an internal transfer to another DOE school. Id. at ¶ 10. As a result, Plaintiff was assigned to P.S. 194 from September 2018 to June 2019. See id. at ¶ 11. While at PS 194, Plaintiff served as a fourth-grade teacher in integrated collaborative teaching classroom and a special education teacher. See id. at ¶ 16. During this

---

[1] On January 7, 2022, in an opinion and order regarding Defendants' motion to dismiss Plaintiff's Second Amended Complaint, Judge Engelmayer terminated Defendants the City of New York, Camille Forbes, and Kerianne Harrison from this matter. See ECF No. 31.

time, Kerriane Harrison served as the Principal and Collen Cornwell Lewis served as the Assistant Principal. See id. at ¶¶ 12-13.

In accordance with the memorandum of agreement entered into between the Board of Education of the City School District of the City of New York and the United Federation of Teachers, "[p]robationary teachers shall receive a minimum of one (1) formal and three (3) informal observations." Id. at ¶ 14. During the 2018-2019 school year, Plaintiff received four observations in total—three informal unannounced observations, and one formal announced observation. See id. at ¶ 15. On October 26, 2018, Assistant Principal Lewis conducted an informal observation of Plaintiff and Plaintiff received a combination of "Developing" and "Effective" ratings. See id. at ¶ 20. Then, on January 25, 2019, Assistant Principal Lewis conducted a second informal observation of Plaintiff and Plaintiff received a combination of "Developing" and "Effective" ratings. See id. at ¶ 25. On April 11, 2019, Plaintiff received her third informal observation and Plaintiff received a combination of "Ineffective" and "Developing" ratings. See id. at ¶ 29. On May 30, 2019, Plaintiff received her formal observation, wherein she received a combination of "Ineffective" and "Developing" ratings. See id. at ¶ 35. Plaintiff received a MOTP (Measure of Teacher Practice) Score of 2.02 out of 4.0 and a MOTP HEDI (Highly Effective, Effective, Developing, or Ineffective) rating of "Developing," for the 2018-2019 school year, dated June 21, 2019. See id. at ¶¶ 5, 39.

On April 29, 2019, Principal Harrison emailed Plaintiff to remind her that the deadline for tenure decisions is April 30, 2019. See id. at ¶ 30. In the same email, dated April 29, 2019, Principal Harrison asked Plaintiff whether she had any examples of impact over two consecutive years to inform Principal Harrison's decision concerning Plaintiff's tenure. See id. at ¶ 31. On April 30, 2019, Plaintiff responded to Principal Harrison's email dated April 29, 2019

stating that she did not keep "artifacts" from her previous school to qualify for tenure. See id. at ¶ 32. Also, on April 30, 2019, Principal Harrison received an automatic email notification from the Tenure Notification System reminding Principal Harrison to submit any tenure recommendation for Plaintiff. See id. at ¶ 33. The same email dated April 30, 2019 included a required recommendation chart which, listed Plaintiff as having an "area of concern." See id. at ¶ 34.

In addition to Plaintiff's classroom observations and annual evaluation during the 2018-2019 school year, Plaintiff received written feedback, attended meetings concerning Plaintiff's performance deficiencies, failed to comply with policies, failed to complete assigned tasks in a timely manner, and had excessive absenteeism. See id. at ¶¶ 17-19, 21-24, 26-28, 32, 35, 37-39. Specifically, between September 26, 2018 and April 14, 2019, Plaintiff received nine written feedback emails through Whetsone Education, an online teacher observation system. See id. at ¶¶ 17-19, 21-24, 27-28. Also, in January and February 2019, Plaintiff attended two meetings with Principal Harrison concerning Plaintiff incorrectly inputting data into drop box. See id. at ¶ 26. Later that same year, on June 10, 2019, Plaintiff emailed Principal Harrison that she was leaving early without seeking any prior permission to do in violation of Chancellor Regulation C-601 9-5. See id. at ¶¶ 37-38. In that same month, Plaintiff had not completed an assigned task until, at least, six days after the deadline. See id. at ¶ 43. Plaintiff also testified that during the 2019-2019 school year, the DOE instructed Plaintiff to meet with Principal Harrison and the administrators and that the meeting could lead to disciplinary action. See id. at ¶ 44. Moreover, during the 2018-2019 school year, Plaintiff was absent 21 days, 12 hours, and 18 minutes. See id. at ¶ 45.

Specifically, on June 24, 2019, Plaintiff texted Principal Harrison to request to have the custodians restore power to the air conditioner in her classroom because she suffers from migraines. Id. at ¶ 41. Then, on June 25, 2019 at 6:48 AM, Plaintiff emailed Principal Harrison and Vice Principal Lewis, requesting that the custodians restore the power. Id. Shortly thereafter on June 25, 2019, Principal Harrison emailed Plaintiff that after Plaintiff texted her, Principal Harrison communicated with the custodian on June 24, 2019 at 12:50 PM, the air conditioning was turned back on, and that Plaintiff would have to use the wall switch to operate it. Id. at ¶ 42.

On June 24, 2019, the DOE discontinued Plaintiff's probationary employment with the DOE based on a review of Plaintiff's performance during her employment. See id. at ¶ 40. On October 10, 2019, DOE reaffirmed the decision to discontinuance Plaintiff's probationary employment. See id. at ¶ 46.

## ARGUMENT

### POINT I

### PLAINTIFF FAILS TO ESTABLISH A RETALIATION CLAIM UNDER THE ADA

The record contains no evidence to raise a triable issue of fact to preclude summary judgment on Plaintiff's retaliation claim pursuant to the ADA. To establish a retaliation claim pursuant to the ADA, a plaintiff must establish that, "(1) [s]he engaged in activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; (4) a causal connection exits between the alleged adverse and the protected activity." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002). If the plaintiff meets this initial burden, the burden then shifts to the defendant to proffer a legitimate, nonretaliatory justification for the adverse action. See id. at *55. If the defendant proffers a legitimate,

nonretaliatory reason, the burden then shifts to plaintiff to show that the stated reasons were pretext for retaliation. Id.

To withstand summary judgment on ADA retaliation claims, plaintiff must also establish that his protected activity was a but-for cause of the alleged adverse action by the employer. See Leftridge v. N.Y.C. Dep't of Educ., No. 17-cv-7027, 2020 U.S. Dist. LEXIS 55423, at *29-30 (S.D.N.Y. Mar. 30, 2020). But-for causation does not necessitate proof that retaliation was the sole cause of the employer's action, but does require proof that the adverse action would not have occurred in the absence of the retaliatory motive. Id. at *30.

In support of her retaliation claims, Plaintiff alleges that the DOE discontinued Plaintiff's probationary employment in retaliation for her request that Principal Harrison ask a custodian to restore the air conditioning to her classroom.. However, Plaintiff's retaliation claim fails as a matter of law because Plaintiff has not established that Plaintiff is considered disabled under the ADA, has not established but-for causation, and the DOE had a legitimate, non-retaliatory reason for its action. First, the record is devoid of any evidence, beyond Plaintiff's conclusory assertions that Plaintiff qualifies as disabled under the ADA. Second, Plaintiff has not established that the "but for" cause of her probationary discontinuance was her request to turn on the air conditioning. Third, the DOE discontinued Plaintiff's employment because on detailed poor performance throughout the 2018-2019 school year. For the reasons set forth below, Plaintiff's retaliation claim should be dismissed.

A.      **Plaintiff cannot establish a prima facie case of retaliation**

   1. **Plaintiff is not considered disabled under the ADA**

As an initial matter, Plaintiff must demonstrate that she is considered disabled with the statutory guidelines of the ADA. Plaintiff does not establish that her purported disability to which the timely claims pertain, her chronic migraines, qualify as disability under the applicable

statute. Pursuant to the ADA, a disability refers to "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. The record is devoid of evidence as to how Plaintiff's chronic migrants substantially affect her major life activities to withstand summary judgment.

Beyond Plaintiff's self-serving, formulaic list of activities, as alleged in the SAC, the record is devoid of any further evidence as to how, and to what extent, the chronic migraines constrained Plaintiff. See FitzGerald v. We Co., No. 20-cv-5260 (AT), 2022 U.S. Dist. LEXIS 59036, at *23 (S.D.N.Y. Mar. 30, 2022); see also SAC, ECF No. 22, at ¶ 77. The sole statement that "heat is a trigger for [her,]" is insufficient. See, e.g., Woolf v. Strada, 949 F.3d 89, 95 (2d Cir. 2020) (affirming grant of summary judgment to employer where employee with stress-induced migraines could not show that "his work-induced impairment substantially limited his ability to work in a class or broad range of jobs," rather than with his supervisors, such that "no reasonable factfinder could conclude that Woolf has a 'disability' within the meaning of the ADA"); Woolf v. Bloomberg L.P., No. 16-cv-6953 (PKC), 2019 U.S. Dist. LEXIS 35082, at *37 (S.D.N.Y. Mar. 5, 2019) (granting summary judgment to dismiss plaintiff's ADA claim because while a letter and plaintiff's "deposition testimony [were] some evidence that [plaintiff's] migraines affect his major life activities of seeing and speaking, [] they do not go toward whether those activities were substantially limited as compared to most people in the general population" (internal citations and quotations omitted)).

2. **Plaintiff has not established "but for" causation**

Additionally, Plaintiff cannot establish that the "but for" cause of her probationary discontinuance was her request to turn on the air conditioning. See Natofsky v. City of N.Y., 921 F.3d 337, 350 (2d Cir. 2019). Indeed, Plaintiff testified that she received multiple ineffective and developing ratings throughout the 2018-2019 school year. See Def.'s 56.1 ¶¶ 17-5, 15, 20, 25, 29, 35. Additionally, Plaintiff testified that during the 2019-2019 school year, the DOE instructed Plaintiff to meet with Principal Harrison and the administrators and that the meeting could lead to disciplinary action. Id. at ¶ 44. See also Alejandro v. N.Y.C. Dep't pf Educ., No. 15-cv-3346 (AJN), 2017 U.S. Dist. LEXIS 49555, at *77 (S.D.N.Y. Mar. 31, 2017) ("Under the circumstances, no factfinder could reasonable infer a retaliatory motive on the part of [d]efendants or find a causal connection (but-for, motivating factor, or otherwise) between [plaintiff's] complaints and [d]efendant;s actions, even despite the noted temporal proximity.")

**B.     Defendant sets forth a legitimate, non-retaliatory reason for Plaintiff's probationary discontinuance**

Assuming, *arguendo*, that Plaintiff's chronic migraines were to qualify as a disability, and Plaintiff could make out a prima facie case, Defendant sets forth a legitimate, non-retaliatory reason for Plaintiff's probationary discontinuance. Plaintiff's assertion that the DOE issued Plaintiff's probationary discontinuance one day after Plaintiff requested that Principal Harrison ask the custodians to restore the air conditioning,[2] without more, is insufficient to rebut the DOE's legitimate reason for Plaintiff's discontinuance. See Mestecky v. N.Y.C Dep't of

---

[2] The DOE notified Plaintiff of their decision to discontinue Plaintiff's probationary employment via letter dated June 24, 2019. However, based on a plain reading of an email dated June 25, 2019, and liberally construing the timing for the purposes of this motion, Defendant assumes that Plaintiff received the June 24, 2019 email sometime after she claims she texted Principal Harrison concerning the air conditioner.

Educ., 791 F. App'x 236, 238 (2d Cir. 2019); see also Smiley v. Cassano, No. 10-cv-3866 (RJS), 2012 U.S. Dist. LEXIS 39615, at *27 (S.D.N.Y. Mar. 20, 2012).

The record clearly establishes that Plaintiff's probationary discontinuance was the cumulation of extensive extensions of Plaintiff's probationary employment, multiple classroom observations, months of written feedback, and an ineffective annual rating. See Jackson v. N.Y.C. Dep't of Educ., 768 F. App'x 16, 17 (2d Cir. 2019). As the record demonstrates, Plaintiff received extensive support and a number of opportunities to improve her performance as reflected by the four extensions of her probationary period over a period of four years at P.S. 206. See Def.'s 56.1, ¶¶ 3-4, 7-9. While serving as a fourth-grade teacher in integrated classroom and a Special Educator at P.S. 206, Plaintiff received nine instances of written feedback, offering Plaintiff numerous occasions to improve her performance from September 26, 2018 to April 14, 2019. See id. at ¶¶ 17-19, 21-24, 27-28.

During the 2018-2019 school year, Plaintiff received four observations, three informal, and one formal evaluation primarily consisting of developing and ineffective ratings. See id. at ¶¶ 20, 25, 29, 35. Specifically, as early as October 26, 2018, Plaintiff received a combination of developing and effecting ratings on her informal evaluation. See id. at ¶ 20. On January 25, 2019, Plaintiff again received a combination of developing and effective ratings on her second informal evaluation. See id. at ¶ 25. On April 11, 2019, Plaintiff received a third evaluation consisting of ineffective and developing ratings. See id. at ¶ 29. On May 30, 2019, Plaintiff received a formal evaluation consisting of ineffective and developing ratings. See id. at ¶ 35. Also, during the 2018-2019 academic year, Plaintiff received a MOTP (Measure of Teacher Practice) 2.02 and a MOTP HEDI (High Effective, Effective, Developing, and Ineffective) score of developing. See id. at ¶ 39. In addition to Plaintiff's observations and evaluation, during the

2018-2019 school year, Plaintiff failed to qualify for tenure, failed to comply with instructions, attending meetings concerning her performance, and had significant attendance issues. See id. at ¶¶ 26, 30-34, 37-38, 43-45.

Plaintiff's denial of completion of probation and termination of license letter explicitly states that "the denial and termination is based on a review of your performance during your employment with the Department of Education and the attached document." See id. at ¶ 40. The aforementioned ample documentation supporting Plaintiff's performance issues suggest a legitimate, nondiscrimination reason for Plaintiff's probationary discontinuance. See Woolf, 2019 U.S. Dist. LEXIS 35082, at *52 (S.D.N.Y. Mar. 5, 2019).

Therefore, the record demonstrates that "the adverse employment action[ was] both part, and the ultimate product of, an extensive period of progressive discipline" beginning months before the purported protected activity. Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 90 (2d Cir. 2001). Even after Plaintiff appealed her discontinuance, the Chancellor's Committee affirmed their decision to deny Plaintiff certification of completion of probationary service. Plaintiff has not offered any evidence, including her own testimony, that any actions were motivated by retaliation rather than DOE's proffered explanation. See Prendergast v. Port Auth. of N.Y. & N.J., No. 19-cv-7314 (ALC) (BCM), 2021 U.S. Dist. LEXIS 164976, at *17-18 (S.D.N.Y. Aug. 31, 2021) ("Plaintiff provides no support for the assertion that Defendant's reasons for termination are pretextual.").

Accordingly, Plaintiff's retaliation claim under the ADA should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court grant its motion for summary judgment, and grant Defendant costs, disbursements, and attorneys' fees, and such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         May 23, 2023

                                            **HON. SYLVIA O. HINDS-RADIX**
                                            Corporation Counsel of the
                                            City of New York
                                            Attorney for Defendants
                                            100 Church Street, Rom 2-171
                                            New York, New York 10007
                                            (212) 356-5031
                                            rdibened@law.nyc.gov

By:   /s/ Rachel M. DiBenedetto
      Rachel M. DiBenedetto
      Assistant Corporation Counsel

- 12 -

## CERTIFICATION

I hereby certify pursuant to Rule 202.8-b of the Uniform Civil Rules for the Supreme Court and County Court of the State of New York that the enclosed brief is produced using 12-point Times New Roman type and the total number of words in the foregoing document including footnotes and exclusive of the caption, table of contents, table of authorities, and signature block, is 2,870 according to the "Word Count" function of Microsoft Word, the word-processing system used to prepare the document, and thus that the document complies with the word count limit set forth in Rule 202.8-b.