UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAKEMA PHILBERT,

Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF
EDUCATION,

Defendant.

Case No. 1:21-cv-03119 (JLR)

**<u>ORDER AND OPINION</u>**

JENNIFER L. ROCHON, United States District Judge:

This case involves a retaliation claim brought by a former New York City elementary-school teacher, Shakema Philbert ("Plaintiff" or "Philbert"), who worked for the New York City Department of Education (the "DOE" or "Defendant") between 2011 and 2019. Philbert initially bought numerous claims against the DOE and other defendants, most of which were dismissed for failure to state a claim. *Philbert v. City of New York*, No. 21-cv-03119 (PAE), 2022 WL 94574 (S.D.N.Y. Jan. 7, 2022) ("MTD Op."). The only remaining claim is Philbert's claim against the DOE for retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (the "ADA"). Defendant now moves for summary judgment on that claim. For the reasons stated below, Defendant's motion for summary judgment is GRANTED.

## BACKGROUND

### I.    Factual Background

Philbert joined the DOE as a special-education teacher in September 2011 and began working at PS 206. ECF No. 80 ("Opp. SOF") ¶¶ 1-2. In November 2014, Philbert informed Camille Forbes, the principal of PS 206, that she had migraines and that they caused her certain issues. ECF No. 81 ("Philbert Decl.") ¶ 7. Philbert requested leave from the DOE in February

2015, and "underwent an angiogram and endovascular treatments of the right transverse sigmoid junction and coiling of the diverticula" at Mount Sinai Hospital.  *Id.* ¶¶ 9-10.  She was cleared to return to work on March 4, 2015.  *Id.* ¶ 11.

Philbert's attendance record during this period was spotty.  Philbert was absent 14 days, 3 hours, and 10 minutes during the 2016-2017 school year and 24 days, 12 hours, and 16 minutes during the 2017-2018 school year.  Opp. SOF ¶¶ 8-9.  Additionally, Philbert did not attain tenure status; instead, her probationary employment period with DOE was repeatedly extended, including most recently through October 5, 2019.  *Id.* ¶¶ 3-4, 7, 10; ECF No. 76-10 at 2-3.

During the summer of 2018, Plaintiff requested to transfer from PS 206 to another DOE school.  Opp. SOF ¶ 10.  She was subsequently assigned to PS 194, *id.* ¶ 11, where her principal was Kerianne Harrison, ECF No. 81-1 ("Philbert Tr.") at 19:13-14.

In October 2018, Philbert met with Harrison and discussed her migraines; Philbert states that she informed Harrison that she "needed a reasonable accommodation to mitigate [her] migraines," specifically the "use of the air conditioner in [her] classroom."  Philbert Decl. ¶ 6; *see also* Philbert Tr. at 36:16-37:5.  Philbert requested the use of the air conditioner "in person" rather than over email or via a formal "reasonable accommodation" form.  Philbert Tr. at 36:16-37:7.

Throughout the 2018-2019 school year, Philbert had consistent disputes with a paraprofessional in her classroom.  Philbert Decl. ¶ 30.  The parties dispute whether Philbert received significant negative written feedback following observations during the same school year.  *Id.* ¶¶ 58-62; Opp. SOF ¶¶ 21-24, 27-28.  Defendant says Plaintiff received such written negative feedback following observations, *see, e.g.*, ECF No. 74 ¶¶ 21-24, but Plaintiff declares that certain of the records pointed to by the DOE are fraudulent or otherwise inaccurate, *see* Philbert Decl. ¶¶ 58, 61.  As an example, Plaintiff states that the records list "multiple different

coaching observation for the same date," that many of the "alleged coaching observations have no identified name to whom the record is written," and that "several of these alleged coaching observations occurred on a Sunday" and/or a date when Plaintiff was absent from work. *Id.* ¶ 61.

The parties also dispute whether Plaintiff received "Ineffective" and "Developing" ratings at her annual review in April 2019. Defendant says so, but the cited testimony and exhibits do not support that assertion. For example, Defendant cites to ECF No. 76-14 as Plaintiff's "Annual Professional Performance Review" dated April 11, 2019, and as showing a combination of "Ineffective" and "Developing" ratings. Opp. SOF ¶ 29. However, ECF No. 76-14 is actually Plaintiff's "Annual Professional Performance Review (APPR) Teacher Observation Report" dated October 26, 2018, and reflects a combination of "Effective" and "Developing" ratings. ECF No. 76-14 at 2-3 (further capitalization omitted). Defendant also cites to Plaintiff's deposition to support this assertion, but the cited pages contain testimony from Plaintiff explaining only that in January she received mostly "effective" ratings and that she had an additional observation in April. Philbert Tr. at 55:25-56:2.[1]

On June 10, 2019, at 2:11 p.m., Philbert emailed Harrison and stated that she would be leaving school 20 minutes early to attend a doctor's appointment. Opp. SOF ¶ 37. Harrison

---

[1] The Court notes that Plaintiff also made several citation errors in her opposition materials, which caused the Court (and presumably Defendant) to unnecessarily spend additional time parsing through Plaintiff's materials. Most prominently, Plaintiff's supporting exhibits were submitted to the Court in a different order than they are described in her declaration. Federal Rule of Civil Procedure 56 "does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute." *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002). It is instead the parties' responsibility to "point out" contested facts for the Court, and to "clarify the elements of the substantive law which remain at issue because they turn on contested facts." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (citation omitted); *see* Local Civ. R. 56.1(d) (statements controverting any statement of material fact must be followed by citation to admissible evidence).

responded to the email and stated that "this is less than 24 hours' notice, and that is quite simply unacceptable.  Additionally, it is usually customary to ask for permission to leave early."  *Id.* ¶ 38.

Philbert continued to have consistent interpersonal issues with the paraprofessional regarding the use of the air conditioner in her classroom.  Philbert Decl. ¶ 40.  Based on this conflict, Harrison instructed the school custodian to disconnect the air conditioner on June 17, 2019.  *Id.* ¶¶ 40-41.  On June 24, 2019, Philbert texted Harrison asking that she have the custodian restore power to the air conditioner.  *Id.* ¶ 42.

On June 25, 2019, at 6:48 a.m., Philbert emailed Harrison that she had to "nurse a headache yesterday evening on account of being in a hot classroom.  When I texted you during lunch yesterday asking you to please have the custodian turn the AC back on the temperature had already reached 81° and continued to climb.  I know I shared with you that I suffer from migraines and previously shared the fact that I had neurosurgery . . . [and] that heat is a trigger for me. . . . I had an aneurysm so getting a headache or migraine continues to be a frightening experience."  Opp. SOF ¶ 41.  On the same day, at 8:41 a.m., Harrison responded that she was "sorry to hear that you are suffering in this fashion" and that "[w]hen you texted yesterday, the AC was turned back on.  You may have to use the wall switch.  As you know I was out of the building yesterday, but communicated with the custodian at 12:50p when I checked my phone and saw your message.  As you may know, the AC was only turned off after 4 unprofessional disputes by the adults in the classroom."  *Id.* ¶ 42.

 By letter dated June 24, 2019, but apparently received at a later date,[2] the DOE terminated Plaintiff's probationary employment.  *Id.* ¶ 40; ECF No. 76-23.

_____

[2] While the letter discontinuing Plaintiff's probationary employment is dated June 24, 2019, DOE stated in its opening brief that it "assumes that plaintiff received the [letter] . . . after she claims she texted Principal Harrison concerning the air conditioner" "based on a plain reading of an

## II.    Procedural History

On April 11, 2021, Philbert filed her original complaint.  ECF No. 1.  The next day, she filed her first amended complaint, asserting claims against the City of New York, the DOE, and two individuals associated with the DOE (collectively, the "Initial Defendants").  ECF No. 4.  The Initial Defendants moved to dismiss the first amended complaint on August 20, 2021.  ECF No. 16.

In response to the motion to dismiss, on October 8, 2021, Philbert filed the operative complaint.  ECF No. 22 (the "Second Amended Complaint" or "SAC").  The Second Amended Complaint asserted claims against the Initial Defendants under the ADA, Title VII of the Civil Rights Act of 1964, 42 § 2000e *et seq.*, the New York State Human Rights Law, New York Exec. L. § 290 *et seq.*, the New York City Human Rights Law, N.Y.C. Admin. Code. § 8-107 *et seq.*, and New York common law.  SAC; *see also* MTD Op. at *7.

On October 29, 2021, the Initial Defendants filed a motion to dismiss the Second Amended Complaint.  ECF No. 24.  The Court granted the motion in part and dismissed all claims asserted in the Second Amended Complaint except for an ADA retaliation claim asserted against the DOE based on Philbert's termination.  MTD Op. at *23.  The Court subsequently entered a case-management plan and discovery commenced.  ECF No. 43.  The case was reassigned to the undersigned on September 19, 2022.  ECF No. 44.

Following discovery, on May 23, 2023, the DOE moved for summary judgment on the remaining claim.  ECF No. 77 ("Br.").  Philbert opposed the motion on June 13, 2023.  ECF

---

email dated June 25, 2019."  Br. at 8 n.2.  The Court is not entirely sure of the "email dated June 25, 2019" to which the DOE is referring, but notes that, according to the exhibits submitted by the DOE, Philbert had exchanges with Harrison regarding her ongoing employment at least as late as June 25, 2019.  *See, e.g.*, ECF Nos. 76-24, 76-25.  Therefore, the Court presumes that Philbert was terminated on or after June 25, 2019.

No. 82 ("Opp.").  The DOE replied in further support of its motion on June 20, 2023.  ECF
No. 83 ("Reply").

## LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 56, a moving party is entitled to summary
judgment if, on any claim or defense, that party "shows that there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A
"genuine" dispute is one in which "the evidence is such that a reasonable jury could return a
verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A
fact is "material" only if it "might affect the outcome of the suit under the governing law."  *Id.*

At summary judgment, the Court's task is simply to "discern[] whether there are any
genuine issues of material fact to be tried, not to decid[e] them."  *Gallo v. Prudential Residential
Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Therefore, "[c]redibility assessments,
choices between conflicting versions of the events, and the weighing of evidence are matters for
the jury, not for the court on a motion for summary judgment."  *Fischl v. Armitage*, 128 F.3d 50,
55 (2d Cir. 1997); *accord Rupp v. City of Buffalo*, 91 F.4th 623, 634 (2d Cir. 2024).  The Court is
"required to resolve all ambiguities and draw all permissible factual inferences in favor of the
party against whom summary judgment is sought."  *Est. of Gustafson ex rel. Reginella v. Target
Corp.*, 819 F.3d 673, 675 (2d Cir. 2016) (quoting *Stern v. Trs. of Columbia Univ.*, 131 F.3d 305,
312 (2d Cir. 1997)).  In deciding a motion for summary judgment, the Court considers "all
relevant, admissible evidence submitted by the parties and contained in the pleadings, depositions,
answers to interrogatories, and admissions on file, together with affidavits."  *Nicosia v.
Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citation and ellipses omitted).

**DISCUSSION**

The sole claim that remains in this case is an ADA retaliation claim based on the allegations that on June 24, 2019, Philbert asked Harrison to have the custodian restore power to the air conditioner because she suffered from migraine headaches, which she asserts is a request for a reasonable accommodation constituting a protected activity.  MTD Op. at *21; Opp. at 1. Shortly thereafter, on or about June 25, 2019, Philbert's probationary employment was terminated, which "is a quintessential adverse [employment] action."  MTD Op. at *22 (citing, among other things, *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008)).  The Court therefore now examines the sole remaining claim in light of the evidence presented on summary judgment, with all inferences drawn in favor of Plaintiff as the non-moving party.

Defendant argues that summary judgment should be granted in its favor on the retaliation claim because (1) Plaintiff has not established that she is disabled under the ADA, and (2) the DOE had a legitimate, non-retaliatory reason for terminating Plaintiff's employment.  Br. at 6. The Court begins by analyzing the first of these two arguments.

**I.     ADA Retaliation Legal Standard**

The familiar burden-shifting framework described by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), applies to retaliation claims under the ADA, *see Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023).  The elements of a *prima facie* case of retaliation under the ADA are: "(i) a plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action."  *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019) (quoting *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 148 (2d Cir. 2002)).

A request for a reasonable accommodation for a disability may constitute protected activity. *Weixel*, 287 F.3d at 149 (2d Cir. 2002); MTD Op. at *21. Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more major life activities" or "being regarded as having such an impairment." 42 U.S.C. § 12102(1).

If a plaintiff establishes a *prima facie* case of retaliation, then the burden shifts to the defendant to proffer a legitimate, nonretaliatory justification for the adverse action. If the defendant establishes such a reason, the burden shifts back to the plaintiff to show that the stated reasons were merely pretext for unlawful retaliation. *See Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 267 (S.D.N.Y. 2020) (citing *Treglia v. Town of Manlius*, 313 F.3d 713, 721 (2d Cir. 2002)).

## II.    Disability Under the ADA

Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's retaliation claim because there is no basis from which a reasonable jury could find that she was disabled or regarded as disabled under the ADA.

As noted, under the ADA, a "disability" includes "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). "An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

"[A]n employee's inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Woolf v. Strada*, 949 F.3d 89, 94 (2d

Cir. 2020) (per curiam) (quotation marks and citation omitted).  An employee alleging a disability that causes a substantial limitation on her ability to work "must show that the limitation affects the ability to perform a class or broad range of jobs" rather than just that she is "precluded only from doing [her] specific job." *Id.* (emphasis, ellipsis, quotation marks, and citation omitted); *see also id.* at 95 ("[E]very Circuit that has addressed this question . . . also has held that . . . a plaintiff alleging a work-related disability must show that [her] condition precludes [her] from working in a *class or broad range of jobs*." (citation omitted)).  "The existence of a disability must be determined on a case-by-case basis." *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d Cir. 2005) (quotation marks and citation omitted).

In this case, the Court previously explained that "[t]here is adverse case law on whether migraines . . . qualify as" a disability.  MTD Op. at *16.  The Court further cautioned that Philbert must "establish concrete facts particular to her migraine condition" to establish that she has a disability within the meaning of the ADA.  *Id.*  Additionally, the Court explained that to survive summary judgment, Philbert must "develop factually how her migraines substantially affected her major life activities." *Id.* at *17.  The Court further advised that a "plaintiff-specific showing will be necessary because, as the EEOC regulations note, a cognizable disability limits an individual's ability to perform a major life activity '*as compared to most people* in the general population.'" *Id.* (citing 29 C.F.R. § 1630.2(j)(1)(ii)).  Philbert has failed to establish such facts.

"Periodic migraine headaches do not amount to a disability under the ADA unless the plaintiff demonstrates that they result in a substantial limitation to a major life activity." *Woolf v. Bloomberg, L.P.*, 16-cv-06953 (PKC), 2019 WL 1046656, at *10 (S.D.N.Y. Mar. 5, 2019), *aff'd sub nom. Woolf v. Strada*, 949 F.3d 89.  Work is a major life activity within the meaning of the ADA.  *Id.*  However, Plaintiff seems to argue only that her condition leaves her unable to perform

one "single, specific job" of working in a particular classroom, rather than being impaired from her major life activity of working. *Id.* The evidence shows only that Plaintiff suffers from migraines that prohibit her from working in a particular classroom that does not have consistent access to air conditioning year-round. When asked during her deposition why she requested to use the air conditioner without restriction, Plaintiff testified that she made the request because "extreme temperatures . . . trigger[ed] migraines for [her] and that room was very hot. That room sat on the side of the building that . . . absorbed a lot of heat . . . from the . . . sunbeams. And also, that room had a very large heating apparatus throughout the whole . . . side of . . . [the] classroom." Philbert Tr. at 38:3-13.

This case is akin to *Muller v. Costello*, 187 F.3d 298 (2d Cir. 1999). There, the plaintiff claimed he was unable to work as a corrections officer due to the presence of cigarette smoke and other environmental irritants at the correctional facility that had employed him. *Id.* at 313. The Second Circuit held that the plaintiff did not suffer from a substantial limitation on the major life activity of working because he would be capable of working in numerous similar, smoke-free jobs, including by working as a security guard in an office building or as a guard at the smoke-free county jail. *Id.*

Here, as in *Muller*, a reasonable jury could not find that Plaintiff suffers from a substantial limitation on the major activity of working, because she is capable of working in numerous similar jobs. Plaintiff's deposition testimony establishes that she could work as a teacher in any classroom that has consistent access to an air conditioner, or in any classroom on the opposite side of the building from where she worked, or in a classroom that had shades drawn or was set to a lower temperature. Indeed, Plaintiff's testimony establishes that she could have continued to work in her same classroom, so long as the paraprofessional with whom she had interpersonal

disputes was not also present in the same classroom.  *See* Philbert Tr. at 36:16-37:15 (explaining

that she requested access to the air conditioner because "there was a situation with a

para[professional], like, constantly turning off the air conditioner").  An individual who is capable

of performing identical work duties but in a different classroom, or in the same classroom but

without a specific colleague, is not substantially impaired from the major life activity of working.

The Court acknowledges that Plaintiff underwent surgery in 2015, but a single surgery

resulting in approved days off from work, years in the past, does not on its own render Plaintiff

disabled within the meaning of the ADA.  *See, e.g.*, *Alvarez v. N.Y.C. Dep't of Educ.*, No. 20-cv-

00255 (VSB), 2021 WL 1424851, at *6 (dismissing claim where plaintiff showed that he had

surgery and was forced to miss work for 26 days to recover from surgery, but failed to allege how

the alleged impairment continued to impact his major life activities); *Fagan v. United Int'l Ins.

Co.*, 128 F. Supp. 2d 182, 185-86 (S.D.N.Y. 2001) (holding on summary judgment that plaintiff

was not disabled within the meaning of the ADA because, despite surgery, Plaintiff failed to show

that he was substantially limited in a major life activity).  Further, "that Plaintiff has been

diagnosed with [a] condition, without more, [is] insufficient" to show that Plaintiff was disabled

within the meaning of the ADA.  *Zuckerman v. GW Acquisition LLC*, No. 20-cv-08742 (VEC),

2021 WL 4267815, *11 (S.D.N.Y. Sept. 20, 2021).

In opposition to Defendant's motion for summary judgment, Plaintiff submitted a

declaration stating that her migraines cause "visual and speech impairments, difficulty hearing,

difficulty sleeping, concentration issues," and more, and that they "affect [her] in all aspects of

[her] daily life and prevent [her] from living a full, fruitful life free from pain."  Philbert Decl. ¶ 3.

Plaintiff also states that she "constantly need[s] to be inside away from bright lights" and that she

has "trouble reading."  *Id.*  It is true that sleeping, learning, reading, concentrating, and thinking

are major life activities.  42 U.S.C. § 12102(2)(A).  However, Philbert's conclusory statements are devoid of detail and do not create a genuine issue of material fact in this case.  *See Woolf*, 2019 WL 1046656, at *12 (summary judgment granted in favor of defendant where plaintiff stated that his migraines caused him to suffer loss of sight, speech, and concentration, but did not direct the Court to evidence of how and to what extent his sight, speech, and concentration were affected); *see also Fitzgerald v. We Co.*, No. 20-cv-05260 (AT), 2022 WL 952963, at *8 (S.D.N.Y. Mar. 30, 2022) (plaintiff's statement that she was disabled in her sleeping and cognitive function, "supported by nothing more than her own affidavit," was "too vague, conclusory, and self-serving to create a triable issue of fact as to whether her anxiety disorder cause[d] substantial limitations in any major life activities" (quotation marks, citations, and brackets omitted)).  In *Zuckerman*, the court held that plaintiff's allegations that her anxiety disorder "substantially interfere[d] with her ability to sleep, concentrate, think, and interact with others" were insufficient to allege a substantial impairment of a major life activity.  2021 WL 4267815, at *11.  Here, as in *Zuckerman*, simply providing conclusory statements that Plaintiff is affected by her migraines is not enough to support a finding that she is disabled within the meaning of the ADA.  Plaintiff has not cited to any contrary authority.  Moreover, Plaintiff was also explicitly warned that to "survive summary judgment" she would need to "develop factually how her migraines substantially affected her major life activities," but she failed to do so.  *See* MTD Op. at *17.  Accordingly, there is no genuine issue of material fact as to whether Plaintiff's migraines constitute a disability within the meaning of the ADA.

In the alternative, Plaintiff asserts that the DOE knew she had migraines, and that she was therefore "regarded" as having a disability.  Opp. at 14-15.  "A plaintiff is also disabled within the meaning of the ADA if [s]he is 'regarded' by h[er] employer as having a physical or mental

impairment that substantially limits a major life activity." *Capobianco*, 422 F.3d at 57 (citing 42 U.S.C. § 12102(2)).  A "regarded as" claim turns on the employer's perception of the employee. *Id*.  For such a claim, the employer "must regard the employee as disabled within the meaning of the ADA, *i.e.*, having an impairment that substantially limits a major life activity." *Id.* (quotation marks and citation omitted).

Here, Plaintiff cites to no evidence that supports an inference that her employer "regarded" her as having a physical or mental impairment that substantially limits a major life activity. Plaintiff declares that she "informed Principal Forbes about [her] migraines and the problems that they caused" in November 2014, Philbert Decl. ¶ 7, and that in May 2017, she informed Forbes that she "would not be able to return to work because of migraines, back and hand pain," *id.* ¶ 16. Plaintiff further declares that in October 2018, Harrison became aware of her "disabilities," and cites an email chain to support that assertion. *Id.* ¶ 24 (citing ECF No. 81-17).  However, the cited email chain does not specifically refer to a "disability" of Plaintiff's, but rather refers only to the fact that Plaintiff's request for leave was denied and that she was unable to pay for her diabetes medication. *See generally* ECF No. 81-17.  Plaintiff also states that Harrison was aware of her migraines generally and that she requested consistent use of the air conditioner in her classroom to alleviate those migraines.  Philbert Decl. ¶¶ 26-27.

None of these statements from Plaintiff supports the inference that her employer regarded Plaintiff as having an impairment that substantially limits a major life activity.  Rather, these statements support the inference that her employer was aware that Plaintiff had migraines and received treatment for those migraines.  But an awareness that the Plaintiff had migraines and received treatment is not the same as regarding Plaintiff as having an impairment that substantially limits a major life activity.  Many people suffer from migraines and are not

substantially impaired, and many persons receive periodic or ongoing treatment for medical conditions and are not substantially impaired. *See, e.g.*, *Allen v. SouthCrest Hosp.*, 455 F. App'x 827, 832-835 (10th Cir. 2011) (migraine condition did not qualify as disability); *Strada*, 949 F.3d at 95 (same). Thus, showing simply that Philbert's employers were aware that Plaintiff had migraines and had periodic treatment for those migraines is not sufficient to show that DOE regarded Plaintiff as disabled within the meaning of the ADA. *See, e.g.*, *Weldran v. Dejoy*, 839 F. App'x 577, 580 (2d Cir. 2020) (summary order) (perceived-disability claim failed on summary judgment because although plaintiff's supervisors knew he had a physical injury, there was no evidence that supported the inference that his employers believed he was substantially limited by that injury).

Plaintiff also points to statements from her supervisors, including that Harrison said she was "empathetic" regarding Plaintiff's migraines and asked whether she could help "support" her. Philbert Decl. ¶ 2. A reasonable juror would not conclude that, simply because Philbert's supervisor was "empathetic" and offered support, the supervisor regarded Philbert as having an impairment that substantially limited a major life activity. *See, e.g.*, *Bruzzese v. Sessions*, 725 F. App'x 68, 72 (2d Cir. 2018) (summary order) (affirming summary judgment where district court held that employer did not regard plaintiff as disabled, despite statement that the employer was "worried about" the plaintiff). Without more, statements such as these also do not support the inference that Harrison or the DOE regarded Philbert as substantially limited in a major life activity.

In sum, there is no genuine issue of material fact as to whether Plaintiff had a disability, or was regarded as having a disability, within the meaning of the ADA. Therefore, summary judgment is granted in favor of Defendant.

### III.   Other Arguments

Because the Court grants summary judgment in favor of Defendant because Plaintiff is not disabled within the meaning of the ADA, the Court need not analyze the other potential grounds for summary judgment.

### CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment is GRANTED. The Clerk of Court is respectfully directed to close the motion pending at ECF No. 73 and CLOSE the case.

Dated: February 23, 2024
       New York, New York

                                   SO ORDERED.


                                   _Jennifer Rochon_
                                   _____
                                   JENNIFER L. ROCHON
                                   United States District Judge